4 0 9 0 9 5 3 in re Marriage of Melissa Hall and Michael Hall. We have the appellant J. Andrew Merriman and for the appellee, Randall Bauer. Mr. Merriman. May it please the court. My name is J. Andrew Merriman and I represent the appellate Melissa Hall. This case raises the issue of whether or not Michael Hall's obligation to pay child support was eliminated for a total of 22 months. In 2006, an order was entered by the Circuit Court that abated his child support obligation because he was injured at work. In accordance with the Supreme Court Rule 296F, the support obligation accrued during that abatement period. Michael is responsible for should be reversed. There are two main issues here and another issue that has been raised by the appellee. The third issue is standard of review. I'll address that first, as the court normally does in its opinions. My first main point is whether the Supreme Court Rule 296 applied to the 2006 abatement of Michael Hall's child support obligation. It did apply to that abatement. And my final issue is whether or not Section N of Rule 296 precludes the application of the rule in general. If we disagree with your analysis about 296F, do you lose? If the court disagrees with me, I believe that yes, I will lose. So the trial court has no authority otherwise than based upon that question. Well, if the rule did not exist, would the trial court have the authority to do what you claim it did? Yes. According to Justice Turner's dissent in Green, the court always has the authority to abate. It has always had that authority. If this case, if Green didn't exist, if the rule didn't exist, if Fink and Horn cases did not exist, Coons would be your ruling case. And it stood for the ruling in that case. Yes, I would lose because it can't accrue to that ruling in Coons. With regard to standard of review, the proper standard of review here is de novo. The issues presented contemplate whether the law was correctly applied to the facts. The lower court interpreted and applied Rule 296F to something that took place in 2006. We went to the court asking for Mr. Hall to be held in indirect civil contempt for not paying his child support. We have always held that that child support was due. In support of that argument, we provided a memorandum of law stating it is due because Rule 296, Green, Fink, and Horn, those three cases. We have always held that that money was due. We aren't asking for a modification. If we were asking for a modification, then I think the standard would be as stated by the appellee. The lower court stated in their order, the fact that the court used abate does not necessarily make it a Rule 296 abatement. I would like to have had a little more explanation, but the question here is did Supreme Court Rule 296 apply to 2006 order? Law applied to facts. As a result, it's a question of law and the standard of review should be de novo. Pursuant to Supreme Court Rule 296F and supporting case law decided here in the Fourth District, Michael Hall's child support obligation did accrue during the 22-month period of abatement, and that period should have been The main support for this argument is Green v. Young, and it was decided here. The most recent case on this issue decided in the Fourth District. Counsel, how much was the child support, excuse me, the workers' compensation settlement? I do not know the exact number. I believe it was in the area of $4,500. And is that the amount that's on child support payments? Again, I don't recall the exact number, but I believe that it came from, I have that number from the printouts that we received from the court and that were provided to me by the state who was representing Ms. Hall prior to mine. Okay. Was there ever temporary or permanent payment of workers' compensation? As far as I know, I do not believe there was. I believe there was one payment, and that was it. So what is your position here that because Mr. Hall was not able to work, his child support should simply have been suspended and built up even though he wasn't able to pay it and then to be paid back at a later time? Our position is that he requested a suspension of child support because he was injured. The judge entered an order stating support abated as of September 2006. Our position is that Rules 296F applies to that order. Because he used the term abate, it accrued. It wasn't forgiven. Well, I take it the difference would have been he wouldn't be subject to finding of interectional contempt for not having paid during the period, but otherwise the debt continues to build up. Is that right? Yes, correct. Is there anything else that he obtains as a result of the trial court granting his motion in your eyes? Is there anything else he obtains as a result of the trial court? Yes, his motion to Well, he received 22 months in which he wasn't required to pay then, but your position is he's going to be required to have to pay at some point. This is an arrearage that's being built up, but he's just not subject to interectional contempt. Isn't that correct? I would say that he did not pay in 2006 when the abatement order was entered. That support was due. It's always been due. There's never been a question that it was due. And the only reason it's not due is because the court recently decided that it was not. Well, is the answer to my question yes? One more In 2006, when the trial court abated his requirement to pay child support, all that meant is the debt built up that he was supposed to pay, but he just wasn't required to pay it then or until further order? Yes. Okay, so the money is still building up. It's just you don't have to pay now, but you're going to have to pay at some point? Yes. And at what point was that changed? In July of 2008 when the support was reestablished. Now, it was abated in 2006 because of an injury. Is that right? Correct. So, is part of your argument that on the facts of this case, the court could have foreseen what, and correct me if I'm wrong, happened, namely that he was going to get a workers' compensation settlement here that would be, even though he didn't have money in 2006, he's going to have money at some time to pay this arrearage? The court did foresee a potential settlement. The order in question in 2006 did state that Mr. Hall would put the attorney in charge of the case at that time in contact with his workers' compensation attorney. Okay. Now, this would be different than, I take it, from Mr. Hall, let's assume, instead of being injured at work, he was laid off. Whatever his work, what was his work, by the way? I forget. I don't know. Let's assume he was in construction and instead of being injured, just construction business himself. Laid off. Now what? Now, if I'm the trial judge and I don't see a pot of money coming in the next couple of years from which any accrued arrearage and trial support can be paid out, what do I do now? If he petitions me to suspend the date, cancel, what do I do? I think the court has the discretion to do, as it sees fit, take everything into consideration, and if they see it necessary that it should be forgiven and it should not accrue, they should write that in the order. What language would that be? Child support is suspended. Child support shall not accrue. Rule 296F does not apply. If that were written in the order that is in question here... At the 2006 hearing where the court entered the order, did either of the parties discuss support accruing? I was not present. I don't know the answer to that question. Did the court make a statement as to whether support would accrue? On the order, no. Orally, I have no knowledge. So, it's essentially silent, just use the words abate? Just like in the case of Green, where they had a line to write the number value for the support, they wrote the word abate. That was enough in Green for 296F to apply. Here, they wrote support shall abate as of this date. Well, the very first question they ask you about 296F applying is because I'm kind of troubled by the idea that it seems to talk about that applies when the county's adopted it. This county has not adopted it. And I guess it's the Horn case, or is it Green? I forget which one. It says, well, I'm not sure that we need... The court's always had this authority. You're absolutely correct. Which, frankly, as a trial judge, I always thought I had that authority. It didn't make any difference to me whether it was a 296F situation or not. But part of the problem, and I don't know that 296F adds anything to this analysis. What if the rule didn't exist? Aren't we still talking about, as the Horn court, I think, says, trial courts have inherent authority dealing with these matters to suspend, abate, essentially do all the things we just talked about. Wouldn't the court have the inherent authority to do that? I think so. So it's a question of what the court's order meant back in 2006? Yes, that is the question. But because the rule does exist, I don't think you can interpret that order as if it does not. Is the issue before this court what the trial judge intended by the 2006 order? So that if, in our judgment, the trial judge intended this to be an abatement with accrual continuing, then you win. Or if, in our judgment, the trial judge said, no, this is an abatement with trial support suspended and there's to be no accrual at all, you lose. Is that really the issue before us here? The way you state it is correct. I do not believe it's the issue. What part is wrong in how I put it? In other words, if that is not the issue, clarify what is. In terms of how you stated it, prior to the 2006 judgment, you've got Green, you've got Pink, you've got Horn. Those are in the 4th District. Morgan County is in the 4th District. They govern. 296 exists. It has been applied in similar cases in the past. With that in mind, knowing that this rule has been in effect for 16 years, using the term abate is enough to imply that it will accrue. Could he have put more information in there? Absolutely. But I don't think that it's a question of what the judge intended. What does 296 add to this analysis? How does it help explain what the judge meant in 2006? You have to answer that question through Green and through Pink and through Horn. It's that when you use the term abate, just that one word, it was enough for the payments to accrue. The key here is, is he forgiving his payments or did they accrue and are they still owed? So your argument is, even if either party mentioned the word accrue or the court mentioned the word accrue, it continues to accrue anyway? No, Your Honor. That's not your argument? If that 2006 order said suspended, I don't think we'd be here. If it said terminated, revoked, pick a word, but the fact that it used a word. So as I understand it, the Assistant Attorney General added in handwriting the word abate, and that controls the whole case. Would that be your argument? The way it works in Morgan County is that he would have been sitting on the case, listened to the oral order, wrote down what the judge said, handed it to the judge, and the judge signed it. So I believe that someone, the judge, can say that it's abate. If it says abate, the judge also means abate and accrue. Given the case law that's there in the 4th District, yes, they should know that. But 296F doesn't just use the word abate. It uses the words temporarily reduce or totally abate. So there's a modifier present. Doesn't that matter? Let me pull up the language. 296F. On written petition blah, blah, blah, the court may temporarily reduce or totally abate the payments of support, subject to the understanding that those payments will continue to accrue as they come due. And your question again? To what extent does temporarily reduce or totally abate affect our analysis here? I don't think that it does because those terms weren't used. The only term they used was abate? Child support abated as of September, I don't remember the day, 2006. If it was the intention of the court to stop child support payments entirely, without any accrual, what should the court have said? Exactly that. They had a blank slate to write in or to change what Mr. Henry had given him. He had full and ample opportunity to do that, and he didn't. Still don't understand how 296 affects this analysis. 296 affects the analysis because we have a similar fact pattern to Green. Green brings in 296 and uses it as the reason why it can accrue when that order doesn't say accrual. How about 296N? Supreme Court just threw that language in there for the heck of it and it means nothing? I see your opinion hasn't changed from Green. Well, I mean, can you answer that question? Doesn't the case law say that these Supreme Court rules, I would say, are not suggestions. They're expected to be followed. So that language just, I guess, means nothing. They just kind of put it in there and threw it in there but don't pay any attention to it. I mean, I don't understand if we give it some meaning. It says that it has to, for the rule to apply, it has to be adopted, doesn't it? You're absolutely correct. That is exactly what the Third District case of Reamer says. But that is not the way the Fourth District is held. Mere existence provides for authority to use the rule. And that's what has been held in this court three different times and the only three that… So do you think the Fourth District has it right and the Third District has it wrong? I think I'm in the Fourth District and I will use that law. I understand. But the good news is, counsel, we're not required to file our own decisions. Correct. We can, so the question is, were we right to so conclude? Why isn't Justice Turner correct that paragraph N means what it says, that the rule applies in those counties in which it's been adopted? I would love to see the list of counties that have adopted it since 1989. I would imagine it's small. I know in Morgan County, that's just something that would get slipped through the cracks. That process, that procedure to go and apply wouldn't happen. And I think that it would still be in use. The bottom line is that it was 1989 when it happened. It's a long time ago. That language is still there. It has to have meaning. It exists. They didn't write it because they had extra ink. But this court hasn't found that way. It simply hasn't. It has found that it applies regardless of N. And the third district is not something... I'm still wrestling with the issue that I started with. Why do we care? How does the existence of 296 change the outcome in this case? It provides guidance to a vague ruling. What is the guidance it provides? That it should accrue during the period of abatement. Without 296, we don't know. Does it accrue? Does it not? We don't know the answer. Well, it would be up to the trial court. The trial court would have discretion either way. Absolutely. So it's your position that 296F provides guidance so that suggests it should accrue? Yes. It provides guidance in a situation where not enough detail or time is taken on an order. But even under 296F, doesn't the court have to indicate that that's what it's intending to do? The court may temporarily reduce totally abated payment of support, subject to the understanding that those payments will continue to accrue as they come due. Doesn't the court have to kind of indicate that at some point? In a perfect world, absolutely. But they didn't in green, and it was enough there. And I think here it's the same. I think if the court finds for our side and reverses that, it will provide guidance in the future for everybody who comes upon this situation. Somebody's going to get hurt. There's going to be a strike. They're going to ask for support to be taken away. And if this case is out there, they're going to know what they can do. What do they need to do? Exactly what you're saying, Justice Steigman, will hopefully be in their mind. I need to put a little more into this order. So it doesn't fall to an appellate court, and it doesn't fall to what do they need. Let's go back to the board. Thank you very much. Thank you, counsel. Mr. Bauer? Please support. I'm Randy Bauer, and it's certainly a privilege to be here. I anticipate this will be very brief. The term abate is, I believe, a word of art that maybe wasn't used very artfully at the trial court level, and the appellant has pounced on that by trying to pull in Rule 296. There are some, I think the Coon decision, which was decided shortly before the advent of Rule 296, was a well-decided case. It stands for the general rule that under the IMDMA, one's present ability to pay support is what counts. And there are some qualitative differences between going on strike, which was the fact pattern in the Horn and Fink cases, and being injured on the job. When you go on strike, it's voluntary, like a change of employment, and it's done in good faith. But an injury on the job is certainly not expected. It's not voluntary. It's not done by choice. And the other dissimilarity is... What was your client's injury? Pardon me? What was your client's injury? Judge, I wasn't involved in this case at the trial court level. I'm not really sure, and I'm embarrassed to admit that. Well, just off the top, a $4,500 settlement wouldn't indicate to me a permanent disability. It would indicate to me there was a minor injury. Well, yes, it would. And the injury went on for over a year and a half. The injury did, or the case did? Well, the... What was the competition case? The not having to... Being subject to child support occurred for over a year and a half. I think it was 22 months between September of 2006, I believe, is when the petition to suspend, or the motion to suspend child support was filed. And I believe it was 22 months later that the child support obligation was reinstated. But I don't know the exact nature and extent of the injury. I don't believe the parties have ever had an argument or dispute over whether the injury was legitimate or that the workers' comp claim was legitimate. But was he getting TTD during that time period, over the 22 months? My understanding is, and Luke Thomas represented him at the trial court level, my understanding is that there was no temporary disability received, but that a portion of the settlement was provided to the appellant for child support. Now, I can't swear to that. Unfortunately, I was a little bit probably too focused on the legal issues and not the facts that caused the legal issues. And that's my mistake, in hindsight. But this wasn't an injury that apparently no one has disputed, that it was an injury that prevented my client, Mr. Hall, from working. And he did the right thing by filing a motion. But then there was the use of the term abate, which kind of muddied the waters. But as the court has pointed out, there was never any understanding under 296 that there would be an approval during the period that Mr. Hall was unable to work. They didn't set a new court date within six months to revisit the issue. Nothing was done consistent with Rule 296. And unlike a strike where you hope to benefit, and I would note in the Horn case, the court here stated, in speaking to limits to the general rule about prison ability to pay, that there was an exception. If a payer of child support sacrifices $10,000 of income this year, in exchange for receiving $20,000 of income in future years, we should not allow him to impose the burden of child support on a custodian based on the current sacrifice. I think that contemplates the strike scenario. You don't have that with an injury on the job. It's not contemplated. You're not looking to get ahead like you would with a strike. So those are large differences. Judge Bell on... So are you saying that the court does not have the inherent authority to abate child support? No, I'm saying that this was not an appropriate circumstance for an abatement of child support with an accrual to take place during the period of abatement. It just wasn't an appropriate circumstance. Why wasn't it? Why wasn't it? Right. Because there was not... He had the present inability to pay. This was unlike a strike where you make a conscious decision to not work. What is the custodial parent supposed to do? She's still accruing all the costs of supporting this child. Well, that's true, I guess. And that would be a problem. If these folks had remained married, they'd have the same problem. Whether, you know, when a person loses their source of income due to injury, it's going to hurt. And it's going to hurt whether they're married or divorced. It seems to me, counsel, we're dealing with, let's say, three different positions, and you're addressing just one of them. The three are he goes on a strike, voluntarily cessation of work, or he's injured, which happened here, or he's laid off, which is the one I asked about. It seems to me if you're laid off and you're looking for work, that might be the best argument for suspending child support payments or abating them with no accrual. But I'm not sure why if a fellow's not able to work because of an injury, which sounds like it's temporary and he's going to be able to work at some point, and there's going to be some child support or some worker's compensation payment made at some point, why would a suspension of accrual be appropriate in that situation, which is the one we have in fact here? Well, because if, big word, if a portion of that worker's comp settlement is paid over to the obligee, the custodial parent in this case, then that pretty much rights the situation. But the point is he wasn't injured with an expectation that he was going to get more money in the future, which is why a lot of people go on strike to get more money, more benefits. Well, didn't the court make some reference to the fact that he's likely to get the settlement at some point for his worker's compensation injury? Well, but if he pays a percentage of that, whatever is determined appropriate, two children it would have been 28%, then he's done I think all that the law would expect of him. He's not going to be getting more money. The court in the Horn case talks about sacrificing $10,000 of income one year to gain $20,000 the next year. If I understand your answer, you're saying that his worker's compensation payout will automatically include a deduction for his dependents, the children? Yeah, it's my understanding that's what was contemplated. So if he gets $10,000 for his injury and he's going to go back to work, your position is $2,800 of it must go to the children no matter what. He's not going to get a check for $10,000. Well, I think that's equitable. No, no, I'm not a worker's compensation lawyer. I don't have a lot of experience in this. These aren't rhetorical questions. Is my understanding correct that the check isn't going to be for $10,000 payable to Michael Hall under my example? That is, that the insurer, the insurance company is going to say, here is $7,200 and $2,800 is going to your kids. We're required to do that by law. I'm sorry, I guess I'm dancing. I'm trying not to. But if he receives in-worker's compensation settlement for the time he was off work, I think that should be treated by a court as net income, which is subject to child support because it is retroactively paying him for the time that he wasn't making. But there's no automatic part of this? I mean, the insurance company is going to count him a check for $10,000 and then the court is going to have to decide what they're going to do. Counsel, I don't understand that argument that you just made. The award would be for permanent partial disability. So that's for the future because of the disability, not for the past, which would be the temporary total disability. And we don't know if he got any TTD. My presumption is he must not have or there probably would not have been an abatement. There may have just been a reduction because he would only get two-thirds of his salary if he was receiving TTD. So why do you say that if the award was, take Justice Steinman's example, $10,000, $2,800 of it would, by operation of law, be paid as child support? Well, okay, by operation of law. I think, look, I'm not a workers' compensation attorney either, but I think that the parties can structure a settlement so that a portion of that settlement is for lost wages during the period of the injury. And that portion, if it's for lost wages, would, in my opinion, by law or by court order, which is by law, would account for a percentage of that portion of the award. Well, I guess the parties could agree it's for lost wages, but that's not what it's for. Permanent partial disability is not for lost wages. That's temporary total disability. Well, right. So if we're talking about a lump sum payment without any delineation between what's for lost wages and what's for permanent disability, then it wouldn't be a percentage of that lump sum amount. There would have to be a separation. But don't these remarks that you've just made undercut your argument in that you're arguing here that the child support during this time post-2006, post-injury, didn't accrue. It stopped. And if that's the case, then why would there be any deduction from the payout for the injury? Your whole point is this, hey, this all stopped. My guy couldn't work until such time as he was able to work. There was no accrual at all. Isn't that your argument? Well, the workers' comp issue was never an issue for purposes of— But your argument is there was no accrual of child support payments post-2006. Isn't that right? Most definitely, because this was not an appropriate circumstance for an accrual. It was totally unlike going on strike. So why did he pay $4,500 from his workers' compensation settlement if it wasn't accruing? Pardon me? Why did he pay the $4,500 from his workers' compensation settlement if there was not child support accruing? Your Honor, I can only say that with all due respect and deference, workers' comp was not one of the issues that was raised on appeal and what happened to the settlement. So I don't know what the workers' comp settlement was for. I don't know for a fact that a portion of it was paid over. It was a non-issue from my perspective, and I hate to be backing out like that, but the whole issue of whether he paid anything from a workers' comp settlement or what that workers' comp settlement—we're visiting that for the— I'm visiting that for the first time this moment, and I wasn't expecting that. I think the record is really on whether 296 applies, and our argument in a nutshell is that it doesn't apply. It wasn't an inherently temporary situation the way a strike is. It wasn't voluntary the way a strike is. It wasn't to try and better your situation in the future the way a strike is, and therefore 296 didn't have to be followed. Sections 505 and 510 of the Illinois Marriage and Dissolution of Marriage Act are also other avenues that a court can take to modify child support, and it was under one of those avenues, not under the abatement provision of 296, the control on the issue of workers' comp. I'm sorry. I just don't—I'm not trying to undercut my own argument, but I didn't see that as something that we would be addressing today, and I apologize for not being prepared to address that today. I wasn't involved at the trial level, and I just didn't see it being an issue for purposes of the briefing argument. Thank you, counsel. Thank you. We'll take this matter under advisement. Oh, I'm sorry. Thank you. In response to Mr. Bauer's argument, he says that strike is different from injury. It's voluntary. I don't think that people who are deciding whether or not to cross the picket line have a completely voluntary decision. It was even cited and asked in Horn. In Horn it says, when asked if there was anything physically preventing him from crossing the picket line, respondent stated, if you want to help management break the union and reduce pay, yes, you can cross the picket line. Respondent also did not want to be considered a strike breaker or a scab because of harassment and potential physical violence. Clearly, it's not voluntary to have a strike. In addition, he said that the injury went on for over one and a half years. We don't know how long the injury went on. The injury stopped sometime before July when my client went back to the court and said, he's healed. He needs to start paying child support again. He didn't come back to the court and say, hey, I'm better. Let's start my child support again. My client had to find out he lives in Quincy, she lives in Jacksonville somehow, and then she came. So when that injury stopped, we don't know. And Justice Myerscough, you asked about the $4,500 that was paid. I believe that that was paid because of other arrearages that took place prior to 2006. He happened to get a pot of money, and the state of Illinois took some of it to pay arrearages prior to 2006. Is that this $4,500? I believe that's the number. As I said, I don't. My remembrance of the record is that there was a $4,500 payment about the time he got his settlement, and that is what my client stated. What was the amount of the settlement? I do not know the total amount. But I don't believe that that $4,500 was earmarked in any way for payment during the abatement. Well, I do have to comment that the record in this case was not very clear on what was due and owing. We have the exhibit that the court apparently had from the department, and the numbers don't match what the court did. I realize you weren't there at that point. You're absolutely right, and my first step in this case was get the record and see what I can do with it. The reason we're here is because it was a mess. Why is Judge Bell hearing this and not Judge Mitchell? Judge Mitchell received letters from either side, personal letters, about the case, and he recused himself. I see. Counsel, what do you think this language means? I believe this was in the 2006 order. Court and A.A.G. Henry, he was the Attorney General, I'm reading this verbatim, of receipt of any income or workers' comp proceeds responded to contact by A.A.G. with workers' comp attorney. What do you think that means? Because I'm not clear. I think it might help your position, though. I think it means… I think you could spin it to help your position. You know, I don't know the answer. I think that they just wanted to make sure that there was something in there, that if you get some money, you need to let us know. We need to keep up on this workers' comp case. We need to know what is going on. If you get some money, A.A.G. Henry wanted to get his hands on it before Mike got his hands on it because it would have been gone. Well, it seems to me it could mean that if he got some workers' comp, then he could pay this support that was accruing, which would assist your argument. Or it could just mean once you get your workers' comp, then we're going to kick the future support back in. But I don't know which of those the trial court intended. I don't know if I'm ever going to disagree with the judge who's helping me, but I don't want that $4,500 to be looked at as it was paid for that accrual. I don't want that 22 months of potential support being lowered by $4,500. Counsel, you're from Clarkston, Michigan? I'm originally from Bluffs, Illinois. And you used to be in Jacksonville. I used to be in Jacksonville for three years. My wife is from Clarkston, Michigan. And that's where you are now? Yes, sir. And you are licensed still in Illinois. I'd just like to say I appreciate the candor from both of you. Thanks. Thank you.